Peter Goldberger My name is Peter Goldberger and it is my privilege to represent Kenneth Smukler, who is the defendant below. Mr. Smukler was convicted after a jury trial of conspiracy and several substantive counts of violating the federal election law as well as one count of obstruction of the FEC. Two other counts he was acquitted. These charges arose from funding of a 2012 congressional primary and an unrelated 2014 primary. So in our brief, we raised four issues. I think our reply brief shows that all the issues are sound and that the government's position on each of them is remarkably weak. I think it is prudent to focus on fewer than four for oral argument and I would like to suggest, unless the court has other ideas, that I focus this morning first on the first argument, which is the definition of willfulness, and if time permits, I may turn briefly to one of the others. That's fine. And you know what, I've got a question for you on that issue right out of the box. You say in your briefing that that affects all of the counts of conviction, that issue, but I'm wondering about that because didn't we emphasize in Kern, which you lean very heavily on, section 2B and section 1001A that may lead to the need for a heightened willfulness requirement. If that's true, does that still affect every count of conviction or just those ones where there's an intersection of 2B and 1001A? Well, there are two aspects to that question and I appreciate your pointing to it. First, let me say that count 11, which is the obstruction count, as the court is probably familiar, that corruptly state of mind, not a willfulness state of mind, so our position on the need for reversal on count 11 turns on spillover effect from all the other counts and the interrelationship of all those counts. So that's just to put that aside first and I think our briefs were not clear about that, so I just wanted to say that at first. Now, Kern does not turn on the relationship of section 2B to the election law exclusively. Yes, it is true that some of our counts here are 2B counts and not all of them are framed in that way, but I think most of them are, in fact, and in any event, the important point is that the reasons given by Judge Wise, joined by Judge Nygard and Judge Becker in Kern for the heightened willfulness standard all were about the nature of a federal election campaign act violation and not about the nature of a 2B violation. Well, hold on just a second. To get the predicate right, am I correct that it counts 1, 5, and 6 where there is a 2B and a 1,001A intersection in this case? You know, I didn't make myself a list. I don't doubt that you have that right. Some of them are 2A counts and some are 2B. In none of them is he the actor who is required by the federal election law to make the report. So, he's either accused of, or the contribution, he either aids and abets a contribution that's said to be improper or he causes a treasurer to file a false report. Uh-huh. And I was under the impression, you can correct me if I'm wrong, that in the United States v. Hayden, which came pretty close on the heels after Kern, we said that part of the It's absolutely part of what was said in Kern, but I'm saying that the rationale of Kern turns on the nature of an election law violation, not on the nature of a 2B violation. So, it's reasoning fully applies. The reason I'm asking you that is because when you say it's reasoning fully applies, it appears that in Hayden and maybe later in Starnes, we were doing a little bit of work to cabin what might be an over-reading of Kern, weren't we? I think that's fair to say about Starnes, for sure. Okay. That cabin, not an over-reading of Kern, I would not say as it applies to election law offenses. I think that is the cabining that was happening there. Right. But why wouldn't that apply just as much to an election law regulatory regime as to an environmental regulatory regime or any other? Well, in my view, it would apply, but the court has restricted its application of the court, I mean the Third Circuit as well as the Supreme Court, to very few offenses. But Kern is on point. The government is trying to push aside and not follow a controlling precedent. Well, we'll hear from Mr. Gibson on this issue, I'm sure. But maybe it's not trying to push it aside. It's trying to deal with it in light of our subsequent case law and an understanding that it's possible to over-read Ratzlaff. Indeed, it's possible to over-read Kern. And if you were to do that, you'd be in pretty dangerous territory because you'd be demanding heightened willfulness standards all over the place. You need some guardrails on it, and I take it that that's what was going on, perhaps, in Starnes and arguably also in Hayden. But let's take a discussion that that was the case. But what's your argument for the idea that even in those places, in those counts where that is going on, that what occurred is harmful as opposed to harmless error in light of the evidence that was in place? Oh, the prejudice and lack of harmless error here, I think, is so strong. This is the heart of the defense. It was exactly as in Ratzlaff. That is, there is no question on the record of this case that Mr. Smuckler was maneuvering to avoid, at least, the election law regulations about contributions and disbursements. That's exactly what was happening. His defense was that he believed in good faith that he had a way to avoid, in each instance, the rule in question that was lawful and was not seeking to violate. So that is exactly the distinction that is at the heart of the Ratzlaff-Carran willfulness defense. In Ratzlaff, it was expressed as the difference between avoiding and evading, which is, in a regulatory regime, the exact difference between lawful and illegal conduct. But I don't think it could possibly have been harmless here. There's a lot of evidence in the record, is there not, that Mr. Smuckler was a very sophisticated political actor. He was not a neophyte to the regulatory regime. He was well familiar with what was going on. Indeed, the candidates came to him and were seeking guidance from him about what the boundaries were. But under those circumstances, even that the jury certainly would have convicted, even under the heightened willfulness standard, given his background and the evidence about it, what's your reaction or response to that? I think that's exactly what the government could have argued and the defense would have argued it. That evidence as supporting the defense, that his knowledge was exactly what led him to believe that he had figured out this regime and these regulations in a way which would allow him to counsel his clients to do what they wanted to do to win their elections without violating the law. Exactly. That's exactly the point. His expertise is the foundation of his belief that he was acting lawfully. And it could not be the case, do you think, that looking at that same evidence would lead a jury to more logically say, no, he knew and he intended. He was evading. He wasn't just avoiding. Well, an appellate court's view of what's more logical cannot determine what's harmless or prejudicial when we're talking about a jury assessment of willfulness. That's the Supreme Court decision in McCormick. This is a quintessential jury question of weighing intent, the difference between a Bryan intent and a Ratzlaff intent. There's no set of facts where a jury couldn't go one way or the other. And it absolutely has to be a jury question, could not be harmless. So the factors that led the court in Curran to reach the decision it did in an election law context are exactly all present here. I'm sorry, did someone? Yeah, I don't know. On the phone, it's a challenge for all of us. Yes, I know. I thought I heard someone start to speak, but I could be wrong. Right. The three bullet points of the Curran test, that is that the case involves a third party's duty to disclose information to the government, that the underlying conduct is not inherently bad or evil, that it's made illegal by a regulatory statute, and that's tightened up by Starnes referring to technical statutes. There's no doubt that the election law here, I have no doubt that the election law statute is at least as technical as the Internal Revenue Code provisions that were at issue with Cheek,  the contention of the defendant in Cheek was he didn't understand that he had a duty to file a tax return on income. Right. Anything less technical than that, I don't know what it is. Yeah, we got your point on that, and we're really actually at the end of your time, but I'll ask my colleagues for just a little indulgence, because I want to ask you a question about these, if I can, and what's your response to that case? That the tolling agreement is sufficient to get past what we said in D's? Right. So I think that the tolling agreement is an agreement not to apply D's. If you read the plain language of the agreement, or if not the plain language, the language as it would reasonably be understood by a criminal defendant thinking that he was making a deal with the government in exchange, giving the government a benefit of the extension, what is the benefit he's getting in exchange, which is the opportunity to persuade them not to indict him, and a limitation. The language of the agreement is that they could prosecute him only for charges arising out of a particular check in August of 2012. It's arising out of. It says arising out of and identifies that date, but it does it in the context of what is, according to D's and other things, a continuing offense, doesn't. That's right. That's what the deal, that's what the agreement limits. The agreement limits it to a prosecution for a charge arising out of, not involving, not and, the agreement goes on to say, certain subsequent conduct. What would a defendant think was the deal there, according to the language of the agreement? That check and subsequent conduct and not prior conduct. That's the meaning of the language, and our argument is, which the government hasn't even tried to answer, is that agreements like this are like plea agreements and should be construed by this large body of law of this court on the rules of construction of plea agreements, that is, reading it in the light that would be reasonably understood by a criminal defendant making that arrangement, and not trying to trick the defendant later, invoking a rule of law. Okay, understood. Let me ask my colleagues, Judge Mady or Judge Roth, if you've got further argument or questions you want to address to Mr. Goldberger. Nothing, go ahead. Just one question, counsel. You had mentioned count one as one of the non-counts that you've impacted by current. Is there any, what is your view on the other objects of the conspiracy that were charged by the government? Did that affect at all our disposition of count one if we did find her on the current issue? It's absolutely something you have to look at, and the way you look at it is through the lens of the jury instructions. The jury was invited by the instructions to find the defendant guilty of conspiracy if they found that he conspired to commit any of these offenses. And certainly, not only was one of the offenses, but the weight of the offenses within the scope of the, that is, within the potential objects of the conspiracy are the ones affected by the current argument. So since the jury, since a conspiracy requires at least, as the cases say, at least the level of intent that the substantive object of the conspiracy requires, for those two reasons, the conspiracy count, count one, is fully encompassed by the willfulness argument that we're making. Thank you. Thank you, Judge Feeney. All right. Thanks, Mr. Goldberg. We'll have you back for your rebuttal, and Mr. Gibson, you've got the floor. Good afternoon, Your Honors. This is Sarah Gibson for the United States. To pick up on the Curran argument, it's the government's position that Curran, certainly after Bryan in the Supreme Court, and then again after Barnes in this circuit, no longer has the full force of law and is inapplicable in this case. To the extent that this court were to find otherwise, that Curran is still somehow good law, it's only impactful on counts five and six where, similarly to Curran, the charges are 1001 via 2B's accomplice liability. It doesn't impact the other counts at all. And if I could just take a moment. How about count one? With respect to count one, there was a multiple object conspiracy there. And with respect to the last object charged there, which was falsification of records under 18 United States Code section 1519, the state of mind required for criminal intent on 1519 is knowingly. It has nothing to do with willfulness via 2B or otherwise. And that object, there is amply sufficient, in fact, overwhelming evidence that records were falsified at the defendant's specific direction in both of these schemes. And therefore, count one is not impacted in any way, even if you were to take the broadest reading of Curran and apply it to all of the election counts, which is what, of course, Mr. Goldberger is advocating, although we obviously disagree with that position. All right. Well, for purposes of argument, let's assume we thought, oh, okay, government's right. It's just five and six. Why isn't the fact that there was an existing precedent on our books, not overruled by us, interpreted in later cases, continued to be cited in Starnes, why isn't it problematic for the government to have convicted a man who was a jury instruction on basic willfulness when a heightened standard of willfulness is called for? Well, again, Your Honor, referring back to our briefs, there are actually three standards of willfulness. There's, of course, the Cheek-Ratzlaff willfulness, which Mr. Goldberger is advocating for. There's the Bryan standard, which we would submit is a mid-level standard of willfulness. And then there is the lower-level, more typical, more common willfulness just associated with the dictum that ignorance of the laws is not a defense. With respect to the Bryan standard, which was articulated by the Supreme Court after Curran, that case, in Judge Stevens' opinion, specifically said that the instructions there, similar to the instructions here, removed the danger that an individual would be convicted for wholly innocent or unwitting conduct. That is, they didn't know that something was wrong because the instructions... Mr. Gibson, that case, I mean, we've still... Starnes postdates that Supreme Court case, right? I'm sorry, Your Honor, could you repeat that? Starnes, our Starnes case, postdates that, does it? Correct. That is correct. Yeah, so we're still citing Curran. We still think it's good law. There's nothing in our case law that indicates that we don't think Curran still has traction or governs our panels. So if that's the case, just deal with it straight up. Assume that we thought Curran is still good law in this circuit. It's got some guardrails around it. How do you get past the fact that, at least with counts five and six, the jury was not instructed in that way? Your Honor, the jury was not instructed with Curran. That is correct. And if this panel were to conclude that Curran is still good law and that that instruction was required, I would submit, again, as has been discussed with Mr. Goldberger, the evidence of Mr. Smuckler's intent here was overwhelming by his own account, both in an interview to the FBI about his knowledge of the campaign finance rules, his profession, his legal degree, his 30 years of experience, and also his just flat-out admissions that he knew what the requirements of the campaign finance law were. Okay, now we're talking harmless error, right, Mr. Gibson? As it relates to the tabening of five and six, correct. Okay. So start with what you need to show to show harmless error and explain to us how you have. Well, Your Honor, in order to establish harmless error here, we have to show that the jury would have convicted nonetheless, even if given the proper instruction. Do you have to show that there would be a conviction beyond a reasonable doubt? What's the standard? Yes. Yes. Okay. How do you show that beyond a reasonable doubt? You just heard Mr. Goldberger say, oh, that's impossible, that's crazy, in fact, no way. So tell us if you've got a way, what's the way? Well, Your Honor, Mr. Smuckler's intent was specifically articulated by Mr. Smuckler to the jury, and I would contest Mr. Goldberger's description of what the argument was to the jury. Mr. Smuckler wasn't presenting himself as not knowing the rules. Mr. Smuckler was presenting his conduct as lawful, that he knew what the rules were, and that he believed that what he was doing was lawful. And in fact, in light of evidence, for example, like the campaign lawyer for the Margolis campaign explicitly telling him he was wrong, that was part of the evidence, or also the overwhelming steps of duplicity and deception and non-direct transactions. In fact, if I could go back to Ratzlaff just for a second in this context, in the Ratzlaff opinion, the Supreme Court described money laundering, for example, as the type of conduct that is known to be nefarious, and distinguished that from the structuring activity that was going on in Ratzlaff, which is only illegal because there is a statute saying it's illegal. There's not an intuitive reason to think it would matter whether you deposited $10,001 dollars. Well, hold on. Are you suggesting that the election laws, the violation of election laws and regulations, are inherently nefarious? That people who don't know that you've got certain limitations, that there's X dollar amounts you can get from this person, and X dollars you can get from that, and that if you can't use money in a general, you've got to use it in the private, you're saying it's nefarious to not know that? I'm saying that as articulated by the Ratzlaff court, this conduct here is more like money laundering. And as it relates to the specific items of... Yeah, stick with me, Mr. Gibson. Sure. The rationale and current an election law takes, right, is that it's just like in Ratzlaff, the structuring, hey, these are complicated things, they're not inherently nefarious, and therefore a heightened standard of willfulness is appropriate. Isn't that the basic rationale in current? I think that that was the rationale that was articulated in current, but I think that the development in the law in this area has questioned... The development of the law, Mr. Gibson, doesn't make it more nefarious. I mean, the law may have developed, but what motivated and seemed to underlie the rationale for the court and some pretty impressive judges on that panel was that the federal election laws are a supremely complex web of regulatory matters and that a person can get stuck there easily and we shouldn't hammer them for that. We should require something more than ordinary willfulness. We should require something that shows they knew they were actually... To violate that law. Now, take it for the sake of discussion, we thought that was sound thinking. How do you, in the context of a harmless error analysis, show that the evidence in this case was so strong on five and six that beyond a reasonable doubt, Mr. Schmuckler was going to go down, even though the judge, with the help of a lawyer, didn't instruct the jury about that heightened willfulness? Well, Your Honor, to take some of the examples that you specifically inquired about a moment ago, Mr. Schmuckler acknowledged knowing the contribution limits, specifically himself. Mr. Schmuckler approved and reviewed all of the filings that went to the FEC, in particular in the Margolis campaign. In the Brady campaign, Mr. Schmuckler and Judge Moore discussed the purpose of the transactions and the creation of both a fake company, to make it look like a poll was being sold, and the documentation that would be needed to perpetuate that illusion. So, as it relates to Mr. Schmuckler specifically, the question about what Mr. Schmuckler knew is best directed to Mr. Schmuckler, who indicated he knew all of those things, and discussed them both with the agents, discussed them with his co-conspirators. The email traffic that was introduced at the time of trial definitively established that he reviewed the false drafts that were submitted to the FEC, the false letter that was submitted to the FEC in order to obstruct the FEC proceedings. Mr. Schmuckler, unlike the defendant in Curran, in Curran, the defendant was an executive for a small steel company, if I recall correctly. There was no evidence that he was a politically sophisticated individual, let alone a political operative who trains the DNC or who ran campaigns for powerful people all across the country. The evidence here is sheerly overwhelming as it relates to what Mr. Schmuckler knew, and it's coming from his own account, both in his testimony on the stand, in his interview with the FBI, and in his discussion, as I said, with the co-conspirators. So, there's no absence of willfulness or knowledge of what the law required on this record. The fact that the jury rejected Mr. Schmuckler's good faith request, or he received a good faith instruction, that the jury rejected that defense is just evidence of the overwhelming nature of the evidence against Mr. Schmuckler, not a reason for him to seek relief under the dictates of what he argues Curran to be at this point. But also, as it relates to the Curran decision, in that opinion, admittedly, at the time the precedent to guide it on the issues as it related to willfulness, specifically in the federal election law context, it was an issue of first impression for the Curran court. And my point to this panel is that developments, both reflected in Starnes, albeit in a different context, but also across the country in the context of federal election Campaign Act violations, have gone in a different direction. And the heart of the offenses charged here against Mr. Schmuckler are involving deception. Tell the truth about what you spent and where you got the money. Don't misattribute the source of the money. I mean, these are basic concepts. This is not like the tax provision that was issued in Cheek, nor is it even like the registration provision at issue in Ratzlaff. All right. Don't lie. That's the bottom line here. Yeah, we got your argument on that. Let me ask Judge Mady and Judge Roth if they've got anything they want to ask on this specific issue. No, I don't. Nothing on this issue. Then I would like to ask you to respond to Mr. Goldberger's argument with respect to the assertion that this should be, this tolling agreement should be read in the same way we read, with any ambiguity being construed against the government. First, that point. And second, if it is read that way, then the government can't win on that. Because a reasonable person reading this with ambiguity in favor of defendant would not understand it to allow it to sweep in earlier conduct. Do you respond to that, please? Yes, Your Honor. And on the first part, if there were ambiguity in the tolling agreement, of course, that should be read against the government, if there were ambiguity. But as Your Honor pointed out in the discussion with Mr. Smucker, there is no ambiguity here. And it talks about conduct arising out of that particular offense. And what we're dealing with are a single contribution of $90,000 that was broken up into installment payments, three installments. What does the addition of the words and subsequent mean for interpreting that? Does it imply that we're talking about that date, that August date, and things after? Well, under the statute as it relates to the aggregation, that offense is not going to be complete until the last payment, based on the nature of the aggregation. As it relates to conduct coming after that, those contributions need to be reported periodically to the FEC. And so there is a number of steps following even the contribution itself, which would not have been time barred, but were contemplated as there is subsequent conduct to the actual final $25,000 payment. I'm just trying to get you to respond to one point, which is, do those words and subsequent at a minimum put some ambiguity into the mix that would be construed against the government to indicate, hey, I'm talking about stuff happening on that date and after. That's what this tolling agreement is addressing. That date and after. And it doesn't open the door for the government to charge me with things that happened before that date. Well, Your Honor, there's no argument put forth that count one, the conspiracy count, is somehow time barred, which obviously conspiracy is a continuing offense. And the conspiracy account dated from the earliest transactions involving the Moore scheme, the Moore-Brady scheme, all the way through the filing of the documents. So the evidence would have been precisely identical even if you conceptualize these as three separate contributions rather than one contribution in three installments. The evidence would have been the same. Moreover, each one of the installment payments was $25,000 or more, thus triggering the felony penalty under the applicable FICA provision. Rather than being charged with three counts, Mr. Smuckler was charged with one count. It changed his exposure not at all. He's facing the same exposure. And the prior, if you conceptualize the earlier two installments as somehow prior conduct under the United States sentencing guidelines, they still would have been relevant conduct for sentencing purposes. So at the end of the day, even if you conceptualize this in the way that Mr. Smuckler would like you to, he gets no benefit of any kind because it doesn't affect his exposure. It doesn't affect his sentence. It doesn't affect the scope of the evidence that would have been introduced at trial under the count one conspiracy count. Okay. I got you. I got you. Judge Mady or Judge Roth? No further questions. Just one question, counsel, on count 10 of the indictment. As I understand it, the government charged that the defendant falsely reported his own contributions from others. Is that a sufficiently alternative theory that it required a unanimity instruction, and if not, why? Well, in the first instance, your honor, the jury was given the standard unanimity instruction repeatedly. In the second instance, as it relates to count 10, what you have here on the verdict slip as it stands is essentially special jury findings on the factual basis for count 10 because the jury found Mr. Smuckler guilty of count 7, making the excess contributions at issue under count 10. In count 8, they found him guilty of conduit contributions, which was also a factual basis under count 10. And in count 9, they found him guilty of making conduit contributions, which is also part of the factual basis of the charge in count 10. So you can see exactly what the jury was going to do with that because they did it. They found him guilty beyond a reasonable doubt of the underlying factual basis that comprised the count 10 false reports to the FEC. It's an alternative form of culpability to be sure, but it's not at all a mystery as to what the jury was doing here and what conduct Mr. Smuckler was found guilty of. Appreciate that, counsel. Thank you. Okay. Thank you, Mr. Gibson. Mr. Goldberger, you've got two minutes for rebuttal. Thank you, Your Honor. First of all, I think we can put aside pretty quickly the argument that Curran is somehow not the law in the Third Circuit because the government reads subsequent decisions in other circuits to be critical of it. That is certainly not the way precedent is overruled. But the offense here, and all the offenses, are exactly like the structuring offense that was involved in Ratzlaff. I mean, one of the counts involves a husband and wife joint bank account check from Mr. Jones, and the argument is somehow he's secretly making a contribution in the name of another because the person is supposed to know that a husband and wife, each of whom can make a contribution, cannot make that contribution with a single check. That's a perfect example of the technicalities that are at issue here. The argument about the poll, the government continues to make the same point, and I answered this in the reply, that there's a big difference between having the right to use a poll and having knowledge of a poll, and again, whether that's something that can be legitimately paid for. So the issue, all of this goes to the government's argument that Mr. Smucker was an expert and knew the rules. The point is, in fact, that this equally supports his defense. The more he knows, the more he thinks he knows ways around the rules. Yeah, he knows the rules. The question is whether he knows or sincerely believes that these rules do not preclude the avoidance techniques in a complex regulatory environment where that kind of avoidance of rules is absolutely typical. And so this ends, and I'll end with where this leads, which is that the government's confusion of whether the evidence is sufficient with whether an error is harmless. Yeah, why don't you turn and address the point made by Mr. Gibson at the end that all the evidence would have been the same anyway. Right. So there is a difference between what evidence is admissible and what the jury instructions tell the jury can be the basis of their conviction. A lot of the evidence that's admissible is not in and of itself a basis for conviction. That turns on the jury instructions. That argument makes no more sense. The admissible evidence argument makes no more sense than his guidelines argument. It's like we're not arguing about, well, the sentence would have been different. That's not the prejudice. The prejudice is a conviction on a non-unanimous jury verdict, which is a constitutional violation. The failure of the jury instructions, in this instance, to protect against the possibility of a non-unanimous verdict under the case law that talks about the special kind of case, which this is one of, that requires a specific unanimity rather than the general unanimity instruction. All right. Well, we appreciate the argument from counsel, and we'll take the matter under advisement.